OPINION
{¶ 1} This case is before the Court on Defendant-Appellant J.E. Scott Corporation's direct appeal from a July 14, 2003 trial court judgment in favor of Plaintiffs-Appellees James and Carol Hastings (the Hastings). The Hastings also have cross-appealed from that judgment.
 {¶ 2} The Hastings sold a framing and tin-smithing business to J.E. Scott Corporation (Scott), of which Ronald Scott is the sole owner. Scott also leased the Hastings' building where it continued to operate the business. One of the Hastings' employees, Patricia Herrick, began to work for Scott following the sale.
 {¶ 3} In 1999 Scott bought new equipment that would require a larger location. As a result, in accordance with the lease terms, Scott gave notice to the Hastings in October of cancellation of the lease effective January 1, 2000. The Hastings promptly listed the property for sale or lease. In the meantime, they offered to work with Scott in the event that more time was needed.
 {¶ 4} On about December 17, 1999 Herrick told Scott that she would be quitting effective January 1, 2000, at which time she would be renting the premises from the Hastings in order to start her own framing business. Several days later she offered to buy some of the framing equipment from Scott, who told her that it would not be vacating the premises. Soon after, Scott fired Herrick. Furthermore, despite Scott's obligation to vacate the building within days, Scott changed the locks on the building.
 {¶ 5} In the meantime, Herrick had entered into an oral agreement with the Hastings to rent their property beginning January 1, 2000 and continuing indefinitely, on a month-to-month basis, until the property was sold. Herrick provided the Hastings with a security deposit. Soon after, Herrick notified the Hastings of the new locks and that Scott would not be vacating the building.
 {¶ 6} Because the Hastings could not assure Herrick that she would have access to the building on January 1, 2000, Herrick began to search for another location. On January 5th she made an oral agreement to lease another building. On January 11th
Herrick advised the Hastings that she was committing to another location, and she signed a lease four days later.
 {¶ 7} By January 11th, the Hastings regained access to their building, and they changed the locks. They told Scott that its property would have to be removed from the premises by January 16, 2000. Although the Hastings tried to rent or sell the premises, they were not able to do so until the property was sold on May 1, 2002.
 {¶ 8} On August 9, 2002 the Hastings filed suit against both Scott and Ronald Scott for tortious interference with a contractual relationship. Both of the defendants filed a motion for summary judgment seeking to dismiss Ronald Scott. The trial court granted that motion. The Hastings promptly attempted to amend their complaint in order to again name Ronald Scott as a defendant, this time under a claim of piercing the corporate veil. The trial court refused to allow the amendment.
 {¶ 9} The case proceeded to a bench trial on May 22, 2003, after which the parties submitted post-trial memoranda in support of their respective positions. The trial court granted judgment for the Hastings in the amount of $23,856 for utilities and lost rent.
 {¶ 10} Scott's first assignment of error:
 {¶ 11} "The trial court erred and acted contrary to law in ruling that a month-to-month tenancy which was to continue for an indefinite period of time was not subject to the statute of frauds."
 {¶ 12} Scott's second assignment of error:
 {¶ 13} "The trial court erred and acted contrary to law in finding in favor of plaintiffs-appellees on their claim for tortious interference with a contractual relationship."
 {¶ 14} In its first two assignments of error, Scott argues that the trial court erred in finding that a valid contract existed between the Hastings and Herrick. While Scott does not deny that the Hastings and Herrick may have reached an oral agreement, it argues that there was no valid contract because there was nothing put into writing as required by the Statute of Frauds. We disagree.
 {¶ 15} "In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." Kentyv. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415,650 N.E.2d 863, paragraph two of the syllabus. On appeal Scott is only challenging the first element, the existence of a contract.
 {¶ 16} Ohio's statute of frauds requires that leases be put into writing. R.C. § 1335.04. However, "if an agreement may be terminated or completed within a year upon the happening of some contingency, it is not covered by the Statute of Frauds." Fordv. Tandy Transp., Inc. (1993), 86 Ohio App.3d 364, 382,620 N.E.2d 996, citations omitted. In this case the trial court correctly noted that because the oral lease agreement between the Hastings and Herrick was for a month-to-month lease until the building was sold, it could easily have been completed within one year, and it was therefore not subject to the statute of frauds. Scott's first and second assignments of error are without merit and are overruled.
 {¶ 17} Scott's third assignment of error:
 {¶ 18} "The trial court erred and acted contrary to law in ruling that the plaintiffs-appellees took reasonable steps to mitigate damages."
 {¶ 19} Here Scott claims that the Hastings failed to undertake reasonable steps to mitigate their damages. In support, Scott insists that the Hastings should have taken immediate steps to have Scott ejected from the property on January 1, 2000.
 {¶ 20} Clearly, there is a duty for one injured by a tort to make reasonable efforts to mitigate his damages. Schafer v. RMSRealty (2000), 138 Ohio App.3d 244, 297, 741 N.E.2d 155, citations omitted. In this case, we agree with the trial court that the Hastings did make reasonable efforts to mitigate their damages caused by Scott's tortious conduct.
 {¶ 21} While we agree that the Hastings had the right to have Scott removed from the property on January 1st, we do not believe that the Hastings were required to do so. The Hastings were at their Florida home on January 1st, when the premises were supposed to be vacated, and they were unable to return to Ohio until January 9th. Within a week of their return, the Hastings had peacefully arranged for Scott to move out of the building. We cannot find that the Hastings acted unreasonably in deciding not to take immediate action to remove Scott, particularly when the situation was able to be resolved in just a couple of weeks' time. Furthermore, it is undisputed that the Hastings promptly listed the property for sale or lease after they lost Herrick as a prospective tenant. Thus, the trial court did not abuse its discretion in finding that the Hastings took reasonable steps to mitigate their damages. Scott's third assignment of error is overruled.
 {¶ 22} Scott's fourth assignment of error:
 {¶ 23} "The plaintiffs made an election of remedy."
 {¶ 24} In its final assignment of error, Scott appears to claim that the Hastings were required to make an election as to whether they wished to treat Scott as a tenant or as a trespasser, and that because they chose to treat Scott as a trespasser, they were not entitled to collect more than the rent due for the month of January. We agree, however, with the Hastings, that they had no legal duty to make such an election.
 {¶ 25} The Hastings' complaint asserted a cause of action for intentional interference with a contractual relationship, not for breach of a lease or contract. As such, the trial court properly awarded a judgment in favor of the Hastings for an amount equal to the rent payments and utility bills that would have been paid by Herrick had it not been for Scott's interference, rather than for rent payments that were not made by Scott. Accordingly, Scott's fourth assignment of error is overruled.
 {¶ 26} The Hastings' first cross-assignment of error:
 {¶ 27} "The trial court erred by granting summary judgment in favor of Ronald B. Scott."
 {¶ 28} In their first cross-assignment of error, the Hastings argue that the trial court should not have granted summary judgment in favor of Ronald Scott. We disagree.
 {¶ 29} Summary judgment pursuant to Civ.R. 56 should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46. Moreover, when considering a motion for summary judgment, the evidence must be construed in favor of the nonmoving party. Id. Finally, it is well established that an appellate court reviews summary judgments de novo, independently and without deference to the trial court's determination. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588,641 N.E.2d 265.
 {¶ 30} In a claim of tortious interference with a contractual relationship, personal liability of Ronald Scott as an individual could result only where his actions benefitted him solely in a personal capacity. Miller v. Wikel Manufacturing Co., Inc.
(1989), 46 Ohio St.3d 76, 545 N.E.2d 76. In this case the trial court concluded that there was no evidence in the record that Ronald Scott's actions only benefitted him in his personal capacity. Moreover, the fact that he is the sole owner of the corporation does not warrant such an assumption. The record supports the trial court's conclusion that although Ronald Scott's actions may have benefitted him individually, those actions also were taken for the benefit of the corporation.
 {¶ 31} Accordingly, the trial court did not err in granting summary judgment in favor of Ronald Scott. The Hastings' first cross-assignment of error is overruled.
 {¶ 32} The Hastings' second cross-assignment of error:
 {¶ 33} "The trial court erred by overruling appellees' motion for leave to amend their complaint."
 {¶ 34} Here the Hastings claim that the trial court should have allowed them to amend their complaint to include Ronald Scott as an individual under a claim of piercing the corporate veil. "A trial court's denial of a motion to amend a pleading will not be reversed absent an abuse of discretion. WilmingtonSteel Prod. v. Cleveland Elec. Illum. Co. (1991),60 Ohio St.3d 120, 122, 573 N.E.2d 622. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.Quebodeaux v. Quebodeaux (1995), 102 Ohio App.3d 502, 505,657 N.E.2d 539."Pentaflex v. Express Services, Inc. (1998),130 Ohio App.3d 209, 217, 719 N.E.2d 1016.
 {¶ 35} The trial court denied the Hastings' request to amend their complaint for several reasons. For example, granting the motion would have significantly delayed the proceedings since the deadline for filing motions for summary judgment had passed, and the case was set for trial. More importantly, however, the court pointed out that the Hastings were fully aware of the facts forming the basis of that claim when they filed their original complaint. For this reason, we cannot conclude that the trial court abused its discretion in denying the Hastings' request to amend their complaint. The Hastings' second cross-assignment of error is overruled.
 {¶ 36} The Hastings' third cross-assignment of error:
 {¶ 37} "The trial court erred by not awarding punitive damages and attorney fees in favor of appellees."
 {¶ 38} In their third cross-assignment of error, the Hastings insist that the trial court should have awarded them both punitive damages and attorney fees. We cannot conclude that the trial court abused its discretion in denying the Hastings' request for punitive damages and attorney fees.
 {¶ 39} The decision of whether to award punitive damages and in what amount rests in the discretion of the finder of fact.Davis v. Sun Refining and Marketing Co. (1996),109 Ohio App.3d 42, 60, 671 N.E.2d 1049, citations omitted. Similarly, the decision of whether to award attorney fees is also left to the sound discretion of the trial court. Vizzari v. Community Hosp.
(2001), 141 Ohio App.3d 494, 502, 751 N.E.2d 1082. We may not substitute our judgment for that of the trial court.
 {¶ 40} The trial court found that the Hastings had failed to prove by clear and convincing evidence that Scott's actions amounted to malice, aggravated or egregious fraud, oppression, or insult. Therefore, the court did not award punitive damages. The court also elected not to award attorney fees. We cannot find an abuse of discretion here, as the trial court's attitude is plainly not unreasonable, arbitrary, or unconscionable.Vizzari, supra, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301. The Hastings' third cross-assignment of error is overruled.
 {¶ 41} The Hastings' fourth cross-assignment of error:
 {¶ 42} "The trial court erred by not granting prejudgment interest in favor of appellees."
 {¶ 43} Finally, the Hastings argue that the trial court should have awarded prejudgment interest to them. Although a trial court has discretion to award prejudgment interest in a case involving tortious interference with a contractual relationship, the Hastings never asked the trial court for prejudgment interest. We cannot conclude that the trial court erred in refusing to award interest that was not requested. The Hastings' fourth assignment of error is without merit and it overruled.
 {¶ 44} The judgment of the trial court will be affirmed.
Judgment affirmed.
Fain, P.J., and Young, J., concur.